IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:18CR00336 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| AUSTIN R. LLOYD, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM REGARDING |
| Defendant. | ) | RESTITUTION |

The United States of America, by its counsel Justin E. Herdman, United States Attorney, and Michael A. Sullivan, Assistant United States Attorneys, respectfully requests that this Court order Defendant Austin R. Lloyd ("Defendant") pay restitution as detailed below.

I. **INTRODUCTION**

A federal grand jury charged Austin R. Lloyd with receiving and distributing visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252 (a)(2); and possessing child pornography, including at least one image of a prepubescent minor or a minor who had not attained the age of 12, in violation of 18 U.S.C. § 2252 (a)(5)(B). (R. 8: Indictment, Page ID 1-2). Lloyd plead guilty to the indictment without a plea agreement. (R. 28: PSR, PageID 87).

Lloyd admitted to using dropbox and Kik accounts on his cellular device to send and receive links containing child pornography. (*Id.*, ¶ 14, PageID 89). In 2017, a federal investigation in the Eastern District of Michigan revealed that Kik accounts with the usernames "bobhusk1" and "armyguynow," later identified as Lloyd, were using the application to trade

child pornography. (*Id.* at ¶ 4, PageID 87). Specifically, between the dates of April 2, 2015 and May 8, 2015, the account owners traded three images and four links containing child pornography, some of which depicted prepubescent females and bestiality. (*Id.* at ¶ 10, PageID 87-88). During a subsequent search of Lloyd's home, investigators seized two cellular devices, containing a total of 325 images of suspected child pornography, and one video of suspected child pornography. (*Id.* at ¶¶ 18-19, PageID 89-90). The investigation also revealed that, from March 24, 2018 to June 5, 2019, Lloyd had multiple conversations with minors through Kik during which Lloyd asked the minors to send him photographs of their genitalia. (*Id.* at ¶ 19, PageID 90).

The law mandates the district court to order restitution. (*Id.* ¶ 22). Three victims requested restitution totaling $114,776.40 as follows: "Violet" $11,500, "Jenny" $3,000, and "Tara" $100,276.40. (*Id.* ¶ 23, 26, 28, PageID 91). Lloyd possessed three images depicting "Violet", three images depicting "Jenny", and one image depicting "Tara". (*Id.* ¶ 21, PageID 90). The restitution requests were attached to the PSR. (*Id.* ¶ 29).

The district court sentenced Lloyd to 240 months of imprisonment on each of Counts 1 and 2, to be served concurrently. (R. 31: Judgment, PageID 432). The court deferred its decision as to the amount of restitution to another date, and gave the parties until March 13, 2020 to file cross motions regarding restitution. (*Id.* at PageID 438).

## II. ARGUMENT

### A. Restitution

Victims of child pornography crimes suffer harms that last a lifetime: "[T]he materials produced are a permanent record of the child[']s participation and the harm to the child is exacerbated by their circulation." *Ferber*, 458 U.S. at 759. Indeed, "pornography poses an even greater threat to a child victim than does sexual abuse or prostitution." *Id.* at 759 n.10 (internal

citation and quotations omitted).  "[T]he use of children as subjects of pornography materials is harmful to the physiological, emotional, and mental health of the child." *Id.* at 758.  As a result, victims incur significant expenses in connection with these harms.

### 1. Restitution Calculation

Restitution is mandatory "for any offense under [Chapter 110]." 18 U.S.C. § 2259(a). Chapter 110 includes violations of Sections 2251, 2252, and 2252A. *See* Title 18, Chapter 110 (Sexual Exploitation and Other Abuse of Children). The statute, in effect at the time of Lloyd's conduct, provided that "[t]he order of restitution under this section shall direct the defendant to pay the victim . . . the full amount of the victim's losses as determined by the court[.]" 18 U.S.C. § 2259(b)(1). The "full amount of the victim's losses" includes any costs incurred by the victim for, among other things, medical services, lost income, attorney's fees and "other costs incurred," and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3). These costs also include the future costs of treatment and therapy. *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999) ("Section 2259 is phrased in generous terms, in order to compensate victims of sexual abuse for the care required to address the long term effects of their abuse").

Further, the statute provided that, "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." 18 U.S.C. § 2259(b)(2). Issues related to restitution "shall be resolved by the court by the preponderance of the evidence," and "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e). Moreover, "the economic circumstances of the defendant" is not a valid reason to decline to issue an order of restitution. 18 U.S.C. § 2259(b)(4)(B)(i). Nor may a court decline to issue a restitution order due to "the fact that a victim has, or is entitled to,

3

receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4)(B)(ii). A recent amendment to 18 U.S.C. § 2259, overhauled the restitution framework, including Congress setting the minimum restitution award at $3,000. While these amendments were made after Lloyd's conduct and were not retroactive, they provided a clear sense of what Congress believed was the appropriate starting point for restitution awards.

In *United States v. Paroline*, 572 U.S. 434 (2014), the Supreme Court addressed the issue of restitution under 18 U.S.C. § 2259 for defendants convicted of possessing images of child pornography. It recognized a pervasive problem of child pornography: the demand for child pornography harms children in part because it drives production, which involves child abuse. "The harms caused by child pornography, however, are still more extensive because child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by [its] circulation.'" *Id*. at 440 (*quoting Ferber*, 458 U.S. at 749). The Court opined, "where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id*. at 458.

"There are a variety of factors district courts might consider in determining a proper amount of restitution." *Id.* at 459. "[D]istrict courts might, *as a starting point*, *determine the amount of the victim's losses caused by the continuing traffic in the victim's images*" and "then set an award of restitution in consideration of factors that bear on the relative causal significance

4

of the defendant's conduct in producing those losses," which include: (1) "the number of past criminal defendants found to have contributed to the victim's general losses;" (2) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;" (3) "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);" (4) "whether the defendant reproduced or distributed images of the victim;" (5) "whether the defendant had any connection to the initial production of the images;" (6) "how many images of the victim the defendant possessed;" and (7) "other facts relevant to the defendant's relative causal role." *Id*. (emphasis added). The Court noted that restitution should not be "token or nominal." *Id.* at 459. The Court further noted that the government "could also inform district courts of restitution sought and ordered in other cases." *Id*. at 460.

Likewise, in *United States v. Hargrove*, 714 F.3d 371 (6th Cir. 2013), a possession case, the Sixth Circuit noted that a "defendant is not responsible for harm that occurred before the date of his offense." *Hargrove*, 714 F.3d at 375; *see also United States v. Gamble*, 709 F.3d 541, 554 (6th Cir. 2013) ("As a logical matter, a defendant generally cannot cause harm prior to the date of his offense."). In *Hargrove*, the court found that "[c]osts for the harms [the defendant] proximately caused that are 'clearly traceable' to him – such as the victims' attorney's fees incurred in seeking restitution in this case – may be assessed directly to him." *Hargrove,* 714 F.3d at 375. Finally, the Sixth Circuit held that "where the court must allocate restitution for aggregate harm caused by multiple defendants, the court may, as one option, apportion the

5

restitution award using the formula described in the government's appellate brief and approved by this court in *Gamble*."[1]  *Id.*

### 2. Defendant's receipt, distribution, and/or possession of the victims' sexual exploitation proximately caused the victims' harm.

In this case, the National Center for Missing and Exploited Children identified six victims. Three of those victims have submitted requests for restitution: "Violet" from the "At School" series, "Jenny" from the "Jenny" series, and "Tara" from the "Tara" series. (R. 28: PSR, ¶¶ 23, 26, 28, PageID 91). After careful consideration of each request, and in accordance with *Paroline*, the United States recommends that this Court order restitution in the amount of $10,000 for "Violet" from the "At School" series, not less than $3,000 for "Jenny" from the "Jenny" series, and not less than $3,000 for "Tara" from the "Tara" series totaling $16,000.

The *Paroline* standards for causation have been met in this case. By receiving, distributing, and/or possessing images of the victims, Defendant was indisputably "part of the overall phenomenon that caused [the victims'] general losses." *Paroline*, 572 U.S. at 457. Anyone who reproduces, distributes, or possesses the images of the victim's abuse "plays a part in sustaining and aggravating" the harm to the victim. *Id.* Moreover, *Paroline* noted the significant harm caused by distributors like Defendant because "every viewing of child

---

[1] In *Gamble*, a possession and receipt case, the Sixth Circuit held that it was reasonable for a district court to apportion restitution by first determining the relevant "pool" of each victim's provable losses that are not traceable to a single defendant. *Gamble*, 709 F.3d at 554. The court may then determine how much of the pool a given defendant caused by excluding any losses incurred prior to the offense date and then dividing the remaining loss by the number of defendants convicted of possessing that image. *Id.* The Sixth Circuit noted that this approach was reasonable, but it was "not necessarily the only way to calculate restitution." *Id.* Although *Gamble* was decided before *Paroline*, it is consistent with *Paroline*, at least insofar as the apportioning does not "result in trivial restitution orders." *See Paroline*, 572 U.S. at 460.

6

pornography is a repetition of the victim's abuse," *id.* at 457, and distributors "may have caused hundreds or thousands of further viewings." *Id.* at 454. Further, a victim need not know about a particular defendant's actions. Thus, Defendant was a cause-in-fact of the victims' harms.

Likewise, Defendant was also a proximate cause of these harms. "[T]he victim's costs of treatment and lost income resulting from the trauma of knowing that images of her abuse are being viewed over and over are direct and foreseeable results of child-pornography crimes." *Id.* at 449. Similarly, "the list of recoverable losses that the statute provides confirms the breadth of what is a foreseeable consequence of defendants' actions." *Gamble*, 709 F.3d at 549. These foreseeable consequences include, but are not limited to, the costs resulting from mental distress and "attorneys' fees incurred in the reasonable effort to obtain restitution." *Id.* at 550. The proximate cause requirement is met here, for the same reasons it was satisfied in *Paroline*: "the cause of [the victims'] general losses is the trade in [their] images." *Paroline*, 572 U.S. at 449. Moreover, "it is indisputable that [Defendant] was a part of the overall phenomenon that caused [the victims'] general losses." *Id.* This is because the unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victims' abuse—including Defendant— "plays a part in sustaining and aggravating" the tragedy. *Id.* Restitution is mandatory for crimes like this "to impress upon offenders that their conduct produces concrete and devastating harms for real, identifiable victims." *Id.* The three victims seek restitution for costs that were a direct and foreseeable result of child pornography crimes like the ones Defendant committed; thus, proximate causation has been established.

The Court must then determine the proper amount of restitution to be paid by Defendant. Because the United States has shown both that Defendant possessed, received, and/or distributed the victims' sexual abuse images and the victims have outstanding losses caused by the

continuing traffic in those images, the Court should order restitution in an amount that comports with Defendant's relative role in the causal process that underlies the victims' general losses. *See Paroline*, 572 U.S. at 457.

Although the "starting point" set forth in *Paroline* is to "determine the amount of the victim's losses caused by the continuing traffic in the victim's images" and "then set an aware of restitution in consideration of factors that bear on the relative causal significant of the defendant's conduct in producing those losses," *Paroline*, 572 U.S. at 460, "this theoretical starting point . . . simply [does] not exist in many cases." *United States v. Reynolds*, Case No. 12-20843, 2014 WL 4187936, at *6 (E.D. Mich. Aug. 22, 2014). It is simply not possible to show "as a starting point," the amount of losses caused by the "continuing trafficking" in these victims' images. *See id.* Because the suggested "starting point" does not logically exist here, this Court may still consider the other factors discussed in *Paroline*. *See id.*

Similarly, the second—reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses—and third—any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted—*Paroline* factors pose similar concerns. To the extent known by the United States, the number of restitution orders per victim are discussed below. This number, however, does not begin to encompass a reasonable prediction of the number of future offenses or the broader number of offenders involved. The ease with which child pornography can now be downloaded creates "an expanding market for child pornography [that] fuels greater demand for perverse sexual depictions of children, making it more difficult for authorities to prevent their sexual exploitation and abuse." *United States v. Reingold*, 731 F.3d 204, 217 (2d Cir. 2013) (internal citations omitted).

8

In this case, each of the three victims have provided voluminous documentation establishing their respective losses. These documents are appended to the PSR and are part of the record. (R. 28-1, 28-2, 23-3, 28-5, 28-6, 28-9, 28-11, 28-12, 28-13: PSR Attachment, PageID 109-421).

"Violet" provided her current documented economic losses, which total $794,118.35. (R. 28-1: PSR Attachment, PageID 120). The restitution request details specific costs, including $72,400 to $118,025.00 in future counseling costs and $647,807.00 in increased medical care attributable to her knowledge and understanding of the existence and distribution of images of her sexual abuse. (*Id.*). "Violet's" father sexually abused her until the age of four, subsequently distributing images of the abuse online. (R. 28-2: PSR Attachment, PageID 120). While she is aware of her father's abuse and subsequent imprisonment, "Violet" is still a minor, and is not yet aware that her father documented the abuse and distributed it online. (*Id.*) Attached to her restitution request is a forensic psychological examination and a forensic pediatric evaluation in support of the losses she will incur leading up to the revelation that he father distributed her images online, and thereafter.[2] (R.28-2: PSR Attachment, PageID 120, R.28-6: PSR Attachment, PageID 166). "Violet" began therapy in January of 2014, at which time she was diagnosed with Adjustment Disorder with Anxiety. (R. 28-2: PSR Attachment, PageID 126.) In 2016, the clinical psychologist who evaluated "Violet" determined that, while not exhibiting significant symptoms at the time of the evaluation, "Violet" is likely to experience significant psychological injury upon learning that her abuse is circulating online. (*Id.* at PageID 132-33). On this basis, the psychologist determined that the estimated costs of "Violet's" therapeutic

---

[2] The curriculum vitae's of both doctors are attached to the presentence investigation report, totaling nearly 100 pages in all.

needs would range from $72,400 to $118,025. (*Id.* at PageID 135). As of date of filing, the United States is aware that "Violet" has received 152 restitution orders ranging from $300 to $11,500. Based on the NCMEC report, Defendant's child pornography collection included three images depicting "Violet." Taking into account the fact that Defendant possessed three images depicting "Violet", the government suggests that the requested restitution award of $10,000 is reasonable and sufficiently accounts for Defendant's relative role in the harm caused to "Violet" without being token or nominal. The court should order $10,000 restitution for "Violet" but cetainly not less than $3,000.

Unlike "Violet," "Jenny" is aware of the circulation of images of her abuse. (R.28-9: PSR Attachment, PageID 197). According to a psychological evaluation of "Jenny" conducted in 2018, Jenny was abused from the ages of seven to nine, until authorities found her abuser exchanging photographs and videos of her abuse online. (*Id.* at PageID 200). These depictions involved sadomasochism as well as bestiality. (*Id.* at PageID 197). During the evaluation, the doctor distributed a series of psychological examinations and determined that "Jenny" from severe stress and anxiety, in addition to exhibiting agoraphobia. (*Id.* at PageID 202-06). Specifically, the doctor noted that it was "evident in ["Jenny's"] presentation and her responses on the standardized measures that her present intrusive thoughts, nightmares, avoidant behaviors, and affect dysregulation derive from knowledge that men all over the world are viewing her humiliating and excruciating sexual victimization." (*Id.* at PageID 203). In addition to recommending that "Jenny" seek therapy going forward, the doctor conducting her evaluation explained that "Jenny" faces substantial obstacles in terms of her long-term vocational prospects. (*Id.* at PageID 205). Specifically, as a result of "Jenny's" trauma, her current skillset is only suitable for low-wage jobs and she does not have the money to obtain further education, which is

10

also impeded by her agoraphobia. (*Id.*) As of date of filing, the United States is aware that "Jenny" has received 134 restitution orders ranging from $100 to $25,600. According to the NCMEC report, Defendant's child pornography collection included three images depicting "Jenny." Taking into account the fact that Defendant possessed three images depicting "Jenny", the government suggests that a restitution award not less than $3,000 sufficiently accounts for Defendant's relative role in the harm caused to "Jenny" without being token or nominal.

Like "Jenny," "Tara" is aware of the circulation of images of her abuse, and attached a victim impact statement to her request for restitution. The statement notes that the victim has been subject to extreme safety measures since the crime against her came into the public eye, preventing her from living in her family home and from maintaining a normal social life. (R. 28-11: PSR Attachment, PageID 316). Even before the age of twelve, "Tara" experienced extreme harassment including persons vandalizing her family home and sending explicit items to her home address. (*Id.*) Over the last three years, "Tara" has been stalked online and offline, with her harassers going so far as to send her images of her exploitation as a child. (*Id.*) As a result, she experiences constant anxiety for which she requires therapy. (*Id.*) In 2019, "Tara" visited her former psychologist, who determined that she still experiences "symptoms of anxiety, suspiciousness, excessive worry, and insomnia," and recommended that "Tara" pursue ongoing treatment. (*Id.* at PageID 319). "Tara" requests $100,276.40 in restitution, attaching records of counseling and insurance expenses from 2008 to 2010, and a list of additional expenses arising out of her inability to remain in her family home ($95,000.00), the necessity for cellular phone tracking technology ($5,328.00), expenses for a post office box ($3,500.00), and expenses to cover future counseling recommended by her former psychologist ($26,400.00). As of date of filing, the United States is aware that "Tara" has received 123 restitution orders ranging from

11

$200 to $18,136.40. Based on the NCMEC report, Defendant's child pornography collection included one image depicting this victim. Taking into account the fact that Defendant possessed one image depicting "Tara" and that "Tara" is requesting $100,276.40, the government suggests that a restitution award not less than $3,000 sufficiently accounts for Defendant's relative role in the harm caused to "Tara" without being token or nominal.

These victims indisputably suffered, and continue to suffer, harm from the continued trafficking of their images. They have provided the Court with very detailed information documenting the nature and amount of that harm. Their losses are recognized under the restitution statute, and Defendant's actions were indisputably a part of that harm. Because "[i]t is perhaps simple enough for the victim to prove the aggregate losses, including the costs of psychiatric treatment and lost income, that stem from the ongoing traffic in her images as a whole[,]" *Paroline*, 572 U.S. at 449, the three victims seeking restitution have provided the Court with ample documentation of their general losses. Therefore, the Court should award each victim an appropriate amount of restitution based on Defendant's relative role in the causal process that underlies the victims' general losses, as set forth above.

### B. Attorney's Fees

In addition to requesting $10,000 in restitution, "Violet" requested $1,500 in attorney's fees. According to her declaration in support of restitution, "Violet's" attorney reviewed the pleadings available on Public Access to Court Electronic Records, crafted a transmittal letter, and gathered the documents necessary for forwarding with the transmittal. (R. 23-13: PSR Attachment, PageID 416). In addition to the work done in this case in particular, "Violet's" attorney and her staff have sorted and catalogued notices from the Victim Notification System, retained experts, conducted research, and communicated and negotiated with prosecutors and defense counsel regarding other cases involving images from the "At School" series. (*Id.* at PageID 415-19).

12

According to the Sixth Circuit in *Gamble*, "litigation costs in connection with the particular defendant" are clearly traceable to a particular defendant and are thus not subject to apportionment. 709 F.3d at 554. Further, "Violet" is entitled to recover a portion of the costs for the generalized time spent by her attorney on the representation as it relates to "reasonable effort[s] to obtain restitution." *Gamble*, 709 F.3d at 550. The fees associated with this work total $28,286.35. (*Id.* at PageID 415). Taking into account the attorney's work in this case, and in making reasonable efforts to obtain restitution, the government suggests that the $1,500 figure requested by "Violet's" attorney is reasonable, and the Court should award that figure.

### III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court order the above-suggested restitution.

        Respectfully submitted,

        JUSTIN E. HERDMAN
        United States Attorney

By:    /s/ Michael A. Sullivan
       Michael A. Sullivan (NY: 2249993)
       Assistant United States Attorneys
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3977
       (216) 522-8354 (facsimile)
       Michael.A.Sullivan@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 12th day of March 2020 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

    /s/ Michael A. Sullivan
    Michael A. Sullivan
    Assistant U.S. Attorney