UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:18CR336 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| AUSTIN R. LLOYD, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Before the Court is the issue of restitution under 18 U.S.C. § 2259[1] and the amount of restitution Defendant Austin Lloyd must pay three identifiable victims of child pornography. The parties have briefed the matter. Because Defendant had a causal role in each of the victims' losses, the Court enters the following Order of Restitution.

**I. BACKGROUND FACTS**

On June 27, 2018, a Grand Jury indicted Defendant with one count of Receipt and Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct, a violation of 18 U.S.C. § 2252(a)(2); and one count of Possession of Child Pornography, a violation of 18 U.S.C. § 2252A(a)(5)(8).

---

[1] Congress amended § 2259 in 2018. However, Congress intended "that individuals who violate [Chapter 110] prior to the date of enactment of the [amendment], but who are sentenced after such date, shall be subject to the statutory scheme that was in effect at the time the offenses were committed." 18 U.S.C. § 2259B. Therefore, unless stated otherwise, all citations to § 2259 will be to the prior version of the law.

On August 16, 2019, Defendant pleaded guilty to both counts without a plea agreement. In doing so, Defendant admitted that from April 2, 2015 through June 7, 2018, Defendant knowingly received and distributed computer files which contained visual depictions of real minors engaged in sexually-explicit conduct.  Defendant shared and received these files via Kik Messenger and DropBox.  In total, Defendant possessed 320 images and one video.

Before sentencing, three victims sought restitution totaling over $150,000.00.  Each victim submitted impact statements and other documents justifying the award of restitution. Three other victims submitted only impact statements.  Each impact statement highlighted the pain and suffering each endured, and continues to endure, because of the actions of Defendant and others like him.

On February 12, 2020, the Court sentenced Defendant to 240 months imprisonment and 10 years supervised release.  The Court deferred ordering restitution until the parties further briefed the issue.  On February 25, 2020, Defendant submitted his brief, which left the issue of restitution to the Court's discretion.  On March 12, 2020, the Government submitted its brief in support of restitution.

## II. LAW & ANALYSIS

### A.    Standard of Review

"[A] district court 'shall order restitution for any offense' under Chapter 110 of Title 18, which covers…offenses involving the sexual exploitation of children and child pornography in particular." *Paroline v. United States*, 572 U.S. 434, 443 (2014) (citing 18 U.S.C. § 2259(a)). Restitution is mandatory.  18 U.S.C. § 2259(b)(4)(A).  However, restitution is "proper under § 2259 only to the extent the defendant's offense proximately caused a victim's loss." *Paroline*,

572 U.S. at 448. The burden of proving the victim's loss is on the Government. 18 U.S.C. § 2259(b)(2); 18 U.S.C. § 3664(e); *Paroline*, 572 U.S. at 443.

The Court in *Paroline* realized the inherit problems of applying traditional concepts of causation to § 2259. *Id.* at 458. For example, the Court explicitly stated § 2259 does not require "but-for" causation. *Id.* Rather, the Court held that, in the "special context" of child pornography,

> where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id.*

When ordering restitution in this context, the amount should "not be severe" nor should it "be a token or nominal amount." *Id.* at 458-59. Rather, a restitution award must be "reasonable and circumscribed" to recognize the "role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Id.* at 459. This is not a "precise mathematical inquiry" but rather an exercise of "discretion and sound judgment." *Id.*

*Paroline* offers "rough guideposts" for determining an amount that fits the defendant's offense. *Id.* at 460. As a starting point, a district court should first "determine the amount of the victim's losses caused by the continuing traffic in the victim's images." *Id.* Next, the court should consider certain factors that indicate "the relative causal significance of the defendant's conduct in producing those losses." *Id.* Those factors include:

> The number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes

> contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved…; whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.*

The parties do not dispute that Defendant both "possessed a victim's images" and that the victims here have outstanding losses from the trafficking of their images. Moreover, it is impossible to trace an amount of the victims' losses to Defendant. In such a case, *Paroline* and § 2259 require this Court to award restitution. The challenge for the Court will be to ascertain an amount that reflects Defendant's "role in the causal process that underlies the victim[s'] general losses."

**B.     The Court's General Outline**

The Court finds the following analysis accomplishes the goals of both § 2259 and *Paroline*. First, the Court will determine the "full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). These losses will include medical services relating to physical, psychiatric or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing and child care expenses; lost income; attorneys' fees, as well as other costs incurred; and any other losses suffered by the victim as a proximate result of the offense. *Id.* at § 2259(b)(3)(A)–(F).

Next, while it is impossible to establish a "baseline harm" that fully encompasses the pain and suffering each victim experiences when their images are trafficked, the Court will set a baseline of $3,000 per victim. In doing so, the Court is persuaded by similar decisions in the circuit and elsewhere that have determined a baseline or financial harm experienced in the

typical case. *See United States v. Reynolds*, 626 Fed. App'x 610, 620 (6th Cir. Sept. 11, 2015) (affirming the district court's use of $1,000 as a baseline restitution amount for each victim); *United States v. Gamble*, 2015 WL 4162924, *3 (E.D. Tenn. July 9, 2015) (setting forth five tiers of possible restitution amounts under § 2259, where $2,000 –$3,500 would be awarded in the typical case); *United States v. DiLeo*, 58 F. Supp. 3d 239, 249 (E.D.N.Y 2014) (finding that restitution awards for "Vicky" have generally ranged from $2,000 to $4,000).[2]

The Court will then analyze the *Paroline* factors. As many courts have previously found, certain *Paroline* factors are more helpful than others. *See United States v. Monzel*, 930 F.3d 470, 482 (D.C. Cir. 2019) ("as restitution factors, future convictions and total offenders 'are virtually unknown and unknowable.'"). Additionally, with respect to the number of images Defendant possesses of each victim, the Court finds useful U.S.S.G. § 2G2.2(b)(7) and will increase the restitution amount in line with that Guideline.[3]

Finally, the Court will review other factors that may lead to an increased award of restitution. Specifically, the Court will consider (i) the frequency of views and shares of the victim's image, *Monzel*, 930 F.3d at 481; *Gamble*, at *3; (ii) the means by which the images were acquired, i.e., trading images, paying for images, requesting certain images, *Monzel*, 930 F.3d at 481; (iii) stalking or contacting the victim, *id.*; (iv) the defendant's individual contribution to the market for the victim's image, i.e., whether he sought out a particular victim's image, length of time trafficking in child pornography, *id.*; (v) whether defendant used the

---

[2] The Court is further persuaded by Congress' recent amendments to § 2259 which require courts to award "an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2)(B) (eff. Dec. 7, 2018).

[3] For a defendant who possesses 10-150 images, the Court will increase the award by $1,000; possession of 150-300 images results in an increase of $2,000; possession of 300-600 images results in an increase of $3,000; and possession of 600 or more images results in an increase of $4,000.

victim's images to groom other children for abuse or exposure to pornography, *id.*; and (vi) the nature of the victim's images, *Reynolds*, 526 Fed. App'x at 620.

**C.     Defendant's Offense Conduct**

In the words of Defendant, his "actions and choices" that necessitated the Indictment "were inexcusable, terrible and wrong." (Doc. 28, PageID: 91). The Government presented evidence that demonstrated Defendant engaged in sexual encounters with at least two female minors. He solicited images from a third minor male. He traded explicit images of children "like baseball cards" with others. (Doc. 41, PageID: 537). This behavior resulted in Defendant's possession of hundreds of images of child pornography.

However, with respect to the identifiable victims here, Defendant's role in their harm was comparatively minor. In total, he possessed less than 10 images of all three victims combined. Defendant did not produce the images, nor did he solicit or pay for these specific victims' images. Moreover, there is no evidence that Defendant stalked or harassed these victims.

Nonetheless, Defendant exacerbated both the harm to each victim and the growth of the child pornography industry. The evidence reflected that Defendant actively solicited and traded pornographic images in chats and links with third-parties. The continued dissemination of these images is extremely problematic. Therefore, because of Defendant's active trafficking of pornographic images, the Court assesses $500 to each victim.

**D.     Violet**

Defendant possessed three images of Violet. Violet requests $10,000 in restitution plus $1,500 for attorneys' fees, for a total of $11,500. The Government adopts the same number. Defendant leaves the restitution award to the discretion of the Court.

Violet estimates her losses to be $794,118.35. (Doc. 28-1, PageID: 110). Included in this amount is: (i) $72,400 to $118,025.00 for future counseling; (ii) $647,707.00 for increased medical care; and (iii) $28,286.35 in expenses, including attorney's fees. (*Id.*). As of March 12, 2020, Violet has received 152 restitution orders ranging from $300 to $11,500. (Doc. 36, PageID: 481).

Even though Violet is unaware that her images are trafficked over the internet, her estimated losses are reasonable. Violet's restitution request contained estimated costs for when she discovers that her abuse had been memorialized and traded by the abuser. Accordingly, the Court adopts the lower end and finds Violet's reasonable estimated losses to be $748,393.35.

Defendant's comparative role in Violet's losses however, is relatively minor. He possessed three images of Violet. While there is evidence that the images are graphic and humiliating, the is no clear evidence which images are at issue here. However, Violet was between the ages of four and eight when the images were produced. Therefore, Violet's age is an aggravating factor.

Finally, Violet's counsel provides support that she has incurred over $28,000 in fees and expenses in representing Violet. (Doc. 28-13, PageID: 421). However, this number represents counsel's total representation, not just counsel's representation in this case. Given the amount of restitution awards currently in place, the Court finds $500 as a reasonable award of attorney's fees.

Accordingly, the Court awards Violet $5,000.[4]

---

[4] Violet's award consists of the base amount, $3,000; Defendant's distribution, $500; age of victim in image, $1,000; and attorney's fees of $500.

**E.      Jenny**

Defendant possessed three images of Jenny.  Jenny requests $3,000.  The Government asks for at least the same amount.  Defendant leaves the restitution award to the discretion of the Court.

At the low end, Jenny estimates her losses to be $3,627,814.  (Doc. 28-9, PageID: 256-264).  Included in this amount is: (i) $1,653,793 in lost wages; (ii) 85,868 in future treatments; and (iii) $1,888,153 in her value of life reduction.  (*Id.*).  As of March 12, 2020, Jenny has received 134 restitution orders, ranging from $100 to $25,600.  (Doc. 36, PageID: 482).

Jenny's estimated losses are reasonable.  Jenny presented evidence of psychological exam reports and obstacles that Jenny will face in the future.  Her future looks bleak, based in large part to the continued trafficking of her images by persons like Defendant.

Defendant's role in Jenny's losses however, was relatively minor.  He possessed three images of Jenny.  While there is evidence of the disturbing nature of Jenny's images, again, it is not clear what images are at issue.  However, like Violet, Jenny was relatively young when her abuse began, so her age is an aggravating factor.

Accordingly, the Court awards Jenny $4,500.[5]

**F.      Tara**

Defendant possessed one image of Tara.  Tara requests $100,276.40.  The Government requests at least $3,000.  Defendant leaves the restitution award to the discretion of the Court.

Tara estimates her losses at $100,276.40.  (Doc. 28-11, PageID: 318).  However, this number includes costs that she incurred before Defendant's conduct in this case.  As the

---

[5] Jenny's award consists of the base amount, $3,000; Defendant's distribution, $500; and age of victim in image, $1,000.

Government points out, "a defendant is not responsible for harm that occurred before the date of his offense." *United States v. Hargrove*, 714 F.3d 371, 375 (6th Cir. 2013). Tara's losses include costs for counseling sessions dating back to 2010 through 2012; insurance premiums dating back to 2008; and costs associated with housing dating back to 2012. (Doc. 28-11, PageID: 318). Tara incurred all these costs prior to Defendant's conduct. And as of March 12, 2020, Tara has received 123 restitution orders, ranging from $200 to $18,136.40. (Doc. 36, PageID: 482-83).

After subtracting the costs that occurred prior to Defendant's conduct, the Court finds Tara's reasonable estimated losses to be $40,000. This finding is based on the evidence presented before the Court in this case. Moreover, this estimate is reasonable. Tara has been the victim of stalking in the past. The Court understands how the continued trafficking of her images leads to experiences of "anxiety, suspiciousness, excessive worry and insomnia." (Doc. 28-11, PageID: 319).

Like the other victims, Defendant's role in Tara's losses was minor. He possessed one image of Tara. Moreover, the Government has not presented any evidence concerning that image that may increase an award of restitution.

Accordingly, the Court awards Tara $3,500.[6]

### III. CONCLUSION

The Court therefore **ORDERS** Defendant to pay a total of $13,000 to the identifiable victims as follows: Violet, $5,000; Jenny, $4,500; and Tara, $3,500. These amounts are neither

---

[6] Tara's award consists of the base amount, $3,000; and Defendant's distribution, $500.

severe nor a token or nominal amount.  Rather, the award reasonably reflects Defendant's role in the causal process of the victims' losses.

    **IT IS SO ORDERED.**

     **s/Christopher A. Boyko**
     **CHRISTOPHER A. BOYKO**
     **Senior United States District Judge**

**Dated: July 17, 2020**